FILED

2021 Jan-20  PM 01:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MAURICE WILLIAM CAMPBELL, JR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **2:16-cv-08021-AKK** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | | |

## MEMORANDUM OPINION

Maurice William Campbell, Jr., a federal prisoner, petitions the court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, based on alleged ineffective assistance of counsel, prosecutorial misconduct, and various conflicts of interest.  Docs. 1, 4.  In a motion to amend his petition, Campbell also alleges that the Supreme Court's 2017 decision in *Honeycutt v. United States* warrants altering his sentence.  Doc. 18.  Finally, Campbell has moved for leave to engage in discovery, doc. 21, and for a status conference, doc. 22.  For the reasons explained below, Campbell's petition and motions are due to be denied.

### I.

Following conviction and sentencing, 28 U.S.C. § 2255 allows a federal prisoner to file a motion in the sentencing court "to vacate, set aside or correct the sentence" on the basis "that the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).  To obtain relief under § 2255, a petitioner must: (1) file a non-successive petition or obtain an order from the Eleventh Circuit authorizing a district court to consider a successive § 2255 motion, 28 U.S.C. § 2255(h), § 2255 Rule 9; (2) file the motion in the court where the conviction or sentence was received, *see Partee v. Attorney Gen. of Ga.*, 451 F. App'x 856, 858 (11th Cir. 2012); (3) file the petition within the one-year statute of limitations, 28 U.S.C. § 2255(f); (4) be "in custody" at the time of filing the petition, *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); (5) state a viable claim for relief under the heightened pleading standards of § 2255 Rule 2(b), *see McFarland v. Scott*, 512 U.S. 849, 856 (1994); and (6) swear or verify the petition under 28 U.S.C. § 1746.

Finally, "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  But "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.*

2

## II.

In November 2011, a jury found Campbell guilty of three counts of aiding and abetting mail fraud, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2 (Counts 1, 59, and 60); one count of conspiracy to commit mail fraud, wire fraud, money laundering, and engaging in monetary transactions in criminally derived property, in violation of 18 U.S.C. § 371 (Count 2); fifty-six counts of aiding and abetting wire fraud, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2 (Counts 3–58); thirty-one counts of aiding and abetting money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 2 (Counts 61–91); and five counts of aiding and abetting engaging in monetary transactions in criminally derived property, in violation of 18 U.S.C. § 1957 and 18 U.S.C. § 2 (Counts 92–96). *See* doc. 118 at 1 in case no. 2:10-cr-00186-AKK-JEO. The undersigned then sentenced Campbell to prison sentences totaling 188 months, varying downward from the sentence range the Sentencing Guidelines prescribed, and ordered Campbell to pay $5.9 million to the State of Alabama in the form of restitution. *Id.* at 6.

Campbell timely appealed, asserting various challenges to his conviction and sentence. The Eleventh Circuit affirmed, finding "no merit in Campbell's challenges to his convictions . . . because the evidence of [his] guilt . . . was overwhelming." *United States v. Campbell*, 765 F.3d 1291, 1294 (11th Cir. 2014). The Circuit also explicitly affirmed Campbell's sentence as without "procedural or substantive

error." *Id.* Campbell did not appeal the Circuit's judgment to the Supreme Court. Doc. 1 at 2. As a result, his conviction became final on March 29, 2015.[1] Campbell timely filed this § 2255 petition. Doc. 1.

## III.

### A.

Before addressing Campbell's petition, the court must resolve whether Campbell's motion to amend that petition, doc. 18, is timely. Analysis turns on the application of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and Rule 12 of the Rules Governing § 2255 Proceedings. Under Rule 12, district courts may apply federal procedural rules to federal habeas proceedings if doing so is consistent with AEDPA and the Rules Governing § 2255 Proceedings. Rule 15(a) of the Federal Rules of Civil Procedure allows amendment "as a matter of course at any time before a responsive pleading is served." Otherwise, amendment is available "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Here, the government has served its responsive pleading and has objected to Campbell's proposed amendment, so amendment is impermissible unless the court grants leave because "justice so requires." Fed. R. Civ. P. 15(a).

---

[1] The judgment became final when the time for filing a direct appeal expired. *See Clay v. United States*, 537 U.S. 522, 532 (2003); *see also Kaufmann v. United States*, 282 F.3d 1336, 1338 (11th Cir. 2002) ("[W]hen a prisoner does not petition for certiorari, his conviction does not become 'final' for purposes of § 2255(1) until the expiration of the 90-day period for seeking certiorari.") (emphasis omitted)).

Additionally, AEDPA requires that a habeas petitioner file his petition within one year of "the date on which the judgment becomes final." 28 U.S.C. § 2255(f)(1). Although Campbell's petition was timely, his motion to amend—filed in 2017—does not comply with AEDPA's limitations period. For that reason, Campbell's proposed amendment is untimely unless it either "relates back" to the "original pleading" under Rule 15(c) of the Federal Rules of Civil Procedure or asserts a newly recognized and retroactively applicable right under AEDPA, *see* 28 U.S.C. § 2255(f)(3).

## 1.

"The 'original pleading' to which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas proceeding." *Mayle v. Felix*, 545 U.S. 644, 655 (2005). Outside of certain exceptions inapplicable here, an amendment relates back to the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading." Fed. R. Civ. P. 15(c)(2). This is not intended to "allow an amended pleading to add an entirely new claim based on a different set of facts." *Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003) (citing *Pruitt v. United States,* 274 F.3d 1315, 1318 (11th Cir. 2001)). In other words, "to relate back, an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial or sentencing proceeding." *Id.*

(citing *Davenport v. United States*, 217 F.3d 1341, 1343 n. 4 (11th Cir. 2000)).  And new claims raised in an amendment "alleging different trial errors" are "not part of the same course of conduct, and, as such, [do] not relate back to the date of the [petitioner's] timely filed § 2255 motion." *Id.* (citing *Davenport*, 217 F.3d at 1346).

The thrust of Campbell's amendment concerns whether the court should revisit the $5.9 million restitution judgment it ordered in light of the Supreme Court's decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).[2]  At issue is *Honeycutt*'s holding that, under 21 U.S.C. § 853—a forfeiture statute specific to drug crimes—a co-conspirator defendant's forfeiture liability is "limited to property the defendant himself actually acquired as the result of the crime."  *Id.* at 1635.  As Campbell sees it, he is entitled to relief because he never "actually acquired" the relevant property.  Doc. 18 at 4.  Consequently, he contends that "[t]his claim should be heard both as a stand-alone *Honeycutt* issue and as an ineffective assistance of trial counsel issue."  Doc. 18 at 4.

---

[2] Campbell also contends that the Eleventh Circuit's decision in *United States v. Stein* (*Stein I*), 846 F.3d 1135 (11th Cir. 2017), constitutes new circuit precedent warranting revisiting the restitution order.  Doc. 18 at 7.  He cites *Stein I* for the proposition that, in his case, "the government failed to show the actual loss to the victim, the university[,]" and that the undersigned incorrectly calculated the loss amount.  *Id.* at 7–8.  The portion of *Stein I* that Campbell cites, however, clearly states that it is merely "an overview of loss calculation principles for purposes of the Sentencing Guidelines and restitution under the MVRA," not an explication of new law.  *Stein I*, 846 F.3d at 1151.  Moreover, the Circuit has already found that Campbell's sentence was without "procedural or substantive error."  *Campbell*, 765 F.3d at 1294.  Campbell's argument otherwise is frivolous.  And in any event, this *Stein I*–based forfeiture argument does not relate back to any of the claims alleged in his original § 2255 petition.

Campbell's contentions are unavailing. To begin, this is an entirely new claim that is unrelated to his original petition. Specifically, Campbell makes four claims in his original § 2255 motion: first, that his counsel provided ineffective assistance due to alleged conflicts of interest and general inaptitude; second, that prosecutors engaged in various forms of misconduct; third, that the undersigned had an apparent or actual conflict of interest; and fourth, that the cumulative effect of these issues rendered Campbell's prosecution constitutionally defective. Doc. 4 at 2–3. And, although Campbell cites Rule 15(c) as authorizing his amendment, he does not support that contention with any substantive arguments, opting instead to merely quote the rule. *See* doc. 18 1–2. Campbell does cite *Mayle v. Felix* in passing, but that decision does not bolster his position. *See id.* at 2. In *Mayle*, the Supreme Court recognized that, in the context of habeas petitions filed by state prisoners, the amended pleading relates back to the original only when there exists "a common 'core of operative facts' uniting the original and newly asserted claims." 545 U.S. at 659 (quotation omitted). The *Mayle* Court rejected an expansive interpretation of Rule 15(c)'s reference to a "conduct, transaction, or occurrence" that would have enabled amendment whenever "both the original petition and the amended pleading arose from the same trial and conviction." *Id.* at 650, 653–54.

Campbell's amendment embraces the expansive view of Rule 15(c) that *Mayle* forbids. His original petition does not on its face relate to the subject of his

amendment—restitution and forfeiture.  Nonetheless, Campbell appears to contend that his *Honeycutt* argument relates back to his original petition because both concern alleged ineffective assistance of counsel.  This attempt to stretch his petition is unpersuasive.  For starters, the bulk of Campbell's ineffective assistance of counsel claim pertains to his trial counsel's alleged conflicts of interest.  *See* doc. 4 at 34–57.  The amendment, in contrast, posits that Campbell's trial counsel was ineffective due to their failure to "present any evidence that Campbell did not personally receive any of the monies alleged to have been fraudulently acquired."  Doc. 18 at 4.  Because these claims arise from "separate conduct or a separate occurrence in 'both time and type,'" the new claim does not relate back to the original.  *Farris*, 333 F.3d at 1215 (quoting *Davenport,* 217 F.3d at 1344).

To avoid that conclusion, Campbell relies on a general assertion of ineffective assistance of counsel to encompass any alleged counsel deficiencies.  Specifically, Campbell alleges broadly in his original petition that he was denied effective assistance "at all stages in the proceedings irrespective of the conflicts of issue."  Doc. 4 at 2.  By framing his *Honeycutt* claim "as an ineffective assistance of trial counsel issue," doc. 18 at 4, Campbell thus seeks to slip this new issue into that expansive category.  The *Mayle* Court unequivocally rejected such a "boundless" approach because it would allow for "[a] miscellany of claims for relief [to] be raised later rather than sooner and relate back."  545 U.S. at 661.  For that reason, the court

must limit its analysis here to those claims specifically listed in Campbell's petition. And although Campbell asserts a laundry list of grievances about his counsel's performance, he does not assert any claims about restitution or forfeiture. *See* doc. 4 at 59–67. Accordingly, Campbell's proposed amendment does not relate back to his timely filed petition.

## 2.

Campbell can overcome the relation back issue if his amendment asserts a newly recognized and retroactively applicable right. Excluding other provisions inapplicable here, AEDPA's one-year statute of limitations runs from the latest of either "the date on which the judgment of conviction becomes final" or "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). However, this provision also does not help Campbell.

Campbell assumes that *Honeycutt* established a newly recognized right that extended his deadline to file. But the Eleventh Circuit has rejected that interpretation of *Honeycutt*, holding that the decision "was not an intervening change in law." *United States v. Stein (Stein II)*, 964 F.3d 1313, 1325 (11th Cir. 2020), *cert. denied*, No. 20-326, 2020 WL 7327843 (U.S. Dec. 14, 2020). Rather, *Honeycutt* "was simply a matter of statutory interpretation" that "did not announce

a new constitutional right or overturn any Supreme Court precedent." *Id.* (quoting *United States v. Bane*, 948 F.3d 1290, 1297 (11th Cir. 2020)). Further, *Honeycutt* interpreted language that was specific to 21 U.S.C. § 853, the drug forfeiture statute. The decision thus "does not amount to an intervening change in controlling law that dictates a result with respect to" other forfeiture statutes. *Id.* It follows that, because *Honeycutt* did not recognize a new right, Campbell's amendment was due within one-year of the date his conviction became final. His amended pleading is therefore time-barred.

## B.

The court will next address the substantive claims in Campbell's § 2255 petition and whether those claims warrant an evidentiary hearing and discovery. To review, Campbell alleges that his counsel provided ineffective assistance, that prosecutors engaged in misconduct, that the undersigned had an apparent or actual conflict of interest, and that the cumulative effect of these issues rendered Campbell's conviction and sentencing unconstitutional. Doc. 4 at 2–3. The court considers these contentions in turn.

## 1.

Campbell raises two types of ineffective assistance of counsel claims. First, Campbell alleges that his counsel "operated under conflicts of interest" throughout all phases of his case that "adversely affected him as a matter of fact and law." Doc.

10

4 at 2.  Second, Campbell says that his counsel was unconstitutionally ineffective "irrespective of the conflicts of issue" for various reasons.  *Id.*  Different legal standards apply to these distinct ineffective assistance of counsel claims.  Generally, a petitioner claiming ineffective assistance of counsel must demonstrate not only that his counsel's performance was below an objective and reasonable professional norm, but also that he was prejudiced by this inadequacy.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  When reviewing such claims, judicial scrutiny is "highly deferential," and the court must be careful not to "second-guess counsel's assistance after conviction or adverse sentence."  *Id.* at 689.  The court may dispose of an ineffective assistance claim if the movant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id.* at 697.

When an ineffective assistance claim is based on a purported conflict of interest, however, a petitioner "must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance."  *Pegg v. United States*, 253 F.3d 1274, 1277 (11th Cir. 2001).  In other words, if the petitioner establishes a conflict of interest that affected his representation, then he need not demonstrate prejudice before obtaining relief.  *See id.*  Rather, he need only "demonstrate that the attorney made a choice between possible alternative courses of action" due to the conflict.  *Id.* (quotation omitted).

11

But the mere "possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1981).

Campbell cannot establish ineffective assistance of counsel under either standard.   To begin, there is no evidence that Campbell's trial counsel was conflicted.   The alleged conflict is based on Campbell's contention that, while his attorneys represented him, they were also "simultaneously involved with, beholden to, currying favor with, and representing . . . purported victims in [his] case."  Doc. 4 at 38.   Glory McLaughlin and Stephen Shaw represented Campbell during his criminal proceedings.[3]  Doc. 10-1 at 5.   Allegedly, McLaughlin was conflicted because she applied for a position at the University of Alabama—a victim of Campbell's fraud—during the pendency of Campbell's appeal.  Doc. 4 at 47.   But McLaughlin did not accept that position until several months later.  *Id.*  Moreover, there is no evidence that McLaughlin actively participated in Campbell's appeal.  In any event, the position McLaughlin secured at the university—an assistant dean at its law school—did not involve legal representation that created any conflicts of interest.

---

[3] In addition to McLaughlin and Shaw, Campbell asserts that other lawyers he communicated with outside of his criminal defense provided ineffective assistance.  *See, e.g.,* doc. 4 at 38.  Because these lawyers did not assist Campbell in the criminal proceedings, their conduct is irrelevant to this claim.  *See Strickland*, 466 U.S. at 671.

Nor was Shaw "beholden" to any external interests.  Campbell notes that, while representing him, Shaw served on the Alabama Commission on Higher Education, which oversees funding for public universities in Alabama and seeks to make college more accessible.  *Id.* at 48–49.  In that role, Shaw was charged with "serving the best interests" of Alabama's higher education system.  Doc. 10-1 at 22.  But contrary to Campbell's assertions, that does not impose a "fiduciary duty and duty of loyalty" that disqualified Shaw from representing Campbell, who was indicted for defrauding Alabama's public universities.  Doc. 4 at 46.  What is more, Shaw's role was uncompensated, and he did not provide legal services to the Commission or the State of Alabama.  Doc. 10-1 at 2 ¶ 5.  Finally, Campbell was admittedly aware of Shaw's service on the Commission when he retained Shaw.  *See* docs. 4 at 45; 10-1 at 2 ¶ 4.

In sum, Campbell raises only the specter of a conflict.  Thus, because he has not shown that his attorneys had an "actual conflict of interest" that "adversely affected [their] performance," this claim fails.  *Pegg*, 253 F.3d at 1277.

So too does his *Strickland* claim.  Campbell alleges that his counsel's performance, irrespective of their purported conflicts of interest, was objectively unreasonable and that their inadequacy affected the outcome in his case.  The unreasonable conduct Campbell identifies includes allegedly failing to prepare, investigate, communicate, and advocate on Campbell's behalf.  Doc. 4 at 59.

13

Additionally, Campbell complains that his attorneys shared confidential information with unauthorized parties and refused to challenge the "intent elements of the crimes charged" or to let Campbell testify at trial. *Id.* at 60. But for these errors, Campbell says he would have had a "complete defense." *Id.* at 59.

These arguments are unavailing. Although Shaw may have shared sensitive information with public officials, he did so only after Campbell authorized that communication in an attempt to retain Campbell's state employment. Doc. 10-1 at 4 ¶ 10–13. Campbell's contentions regarding the legal theory and trial decisions his counsel made, specifically whether Campbell would testify, are the types of strategic decisions that are left to counsel: "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). And Campbell's allegations that his attorneys failed to prepare or investigate his claims are conclusory at best.

At any rate, Campbell's *Strickland* claim is also deficient because he cannot establish that his attorneys' conduct prejudiced him. Although Campbell maintains his "absolute innocence," doc. 4 at 66, the Eleventh Circuit has already affirmed Campbell's conviction based on the "overwhelming" evidence of his guilt. *Campbell*, 765 F.3d at 1294. Accordingly, it is not reasonably probable that his counsels' alleged errors were outcome determinative, and this claim fails. *See*

14

*Strickland*, 466 U.S. at 700 (concluding that there was "no reasonable probability that" contested evidence would have changed the result given "overwhelming aggravating factors" listed in the record).

## 2.

The other issues Campbell raises in his § 2255 petition fare no better. Campbell contends that the prosecution "engaged in outrageous misconduct by interfering with, threatening, and intimidating witnesses" who would have testified in his favor, allegedly violating his due process rights.   Doc. 4 at 67.   He adds that prosecutors withheld exculpatory evidence from him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).   *Id.* at 68.   This misconduct, Campbell says, "effectively demolished any defense [he] might have had." *Id.* at 29.   Campbell also speculates that the undersigned was conflicted and should have recused himself because his prior law firm represented a victim in this case. *Id.* at 3, 56–57.

In addition to being conclusory, these allegations are procedurally barred because they were available on direct appeal.   "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding." *Mills v. United States*, 36 F.3d 1052, 1055–56 (11th Cir. 1994).   A challenge is "available" on direct appeal when it can be reviewed without further factual development. *Id.*   A defendant who abandons an available claim on direct appeal generally cannot

15

overcome that default "unless he can establish cause for the default and actual prejudice resulting from the alleged error." *Id.* However, a default can be excused to avoid a "fundamental miscarriage of justice . . . where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (quoting *Murray v. Carrier,* 477 U.S. 478, 496 (1986)). Here, Campbell has not argued that there is any cause or prejudice to excuse his procedural default. And to the extent that he argues actual innocence, his arguments are unpersuasive. Accordingly, the court cannot consider these claims of alleged misconduct. *See, e.g.*, *Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1180 (11th Cir. 2010).

Finally, although Campbell contends that the "cumulative effect" of the issues raised in his petition warrant vacating his conviction and sentence, he offers no arguments to support that contention. *See* doc. 4 at 68. When addressing cumulative error claims, the court considers first "the validity of each claim individually" and then examines "any errors . . . in the aggregate and in light of the trial as a whole to determine whether the [petitioner] was afforded a fundamentally fair trial." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Under that standard, this claim also fails because "none of [Cambpell's] individual claims of error or prejudice have any merit, and therefore [there is] nothing to accumulate." *Id.*

16

**3.**

Having concluded that Campbell's claims are either conclusory, meritless, or procedurally barred, the court declines to hold an evidentiary hearing or grant discovery in this case.  Campbell has not shown that a hearing would enable him "to prove the petition's factual allegations."  *Schriro*, 550 U.S. at 474.  Instead, the record refutes those allegations, and it is clear that Campbell is not entitled to habeas relief, so the court "is not required to hold an evidentiary hearing."  *Id.*  As for Campbell's discovery motion, doc. 21, the court notes that habeas petitioners are not entitled to discovery as a matter of ordinary course.  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Rather, the court has discretion to grant discovery for "good cause" under Rule 6(a) of the Rules Governing § 2255 Proceedings.  But "good cause for discovery cannot arise from mere speculation." *Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006).  And there is a "general admonition against allowing federal prisoners to use discovery in habeas proceedings as a fishing expedition." *United States v. Cuya*, 964 F.3d 969, 974 (11th Cir. 2020).  Based on the above analysis, Campbell has not shown good cause for discovery, and the court exercises its discretion to deny Campbell's discovery motion, doc. 21.

**IV.**

In light of the foregoing, the court finds that Campbell's arguments fail to establish a sufficient basis to vacate his sentence under 28 U.S.C. § 2255.

Accordingly, his motions to amend, doc. 18, for discovery, doc. 21, and for a status conference, doc. 22, are due to be denied.  Finally, his § 2255 petition, doc. 1, is due to be denied.  The court will do so in an order issued contemporaneously with this memorandum opinion.

      **DONE** the 20th day of January, 2021.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

18